The final argument of the morning is in Appeal No. 23-17-12, Aileen Ormsby v. Nexus RVs. Ms. Stewart? Yes, Your Honor. Good morning to you. Good morning, Your Honors. May it please the Court, Opposing Counsel, my name is Scarlett Stewart and I represent the appellants in this matter. This case involves a fraudulent sale of defective RVs. Fraud and breach of warranty in contract cases are notoriously fact-intensive and this case is no exception to that. However, the District Court in reaching its decision erred when a fact-intensive case construed those facts against the Ormsby's and 2J's to find several things. Ms. Ormsby, I'm sorry, Ms. Stewart, before you go further, can I just clarify, are you only appealing on behalf of the Ormsby's, not on behalf of 2J's? The brief is written primarily focused on the Ormsby's because the decision from the reading your brief that you were appealing the summary judgment ruling against the 2J's. I understand you are on behalf of the Ormsby's, but I want to clarify that because I don't see any arguments directed at 2J's. I agree. There's no arguments directed directly at 2J's. There's headings that are identified as plaintiffs, but I agree there's none. Okay. So you are only appealing the rulings as to the Ormsby's? Yes. Okay. Thank you. So there's no, can I, because I have the same exact question. There's no appeal in front of us that's being advanced by 2J's? Is that what you're saying? I agree there's no arguments fleshed out in the briefs related to 2J's. Okay. And if they're not fleshed out in the briefs, they're therefore waived? Because otherwise you'd have to just stand at the podium and make the arguments you haven't made in your briefs. And I thought you just told me you were not appealing on behalf of 2J's. I did say that, and that's what I was trying to repeat because that's what I understood his question to be. I think what I'm concluding is that the appeal in front of us, it's all brief, you've been clear what your arguments are, it's on behalf of husband and wife, Eileen and George Ormsby. Correct. That's what all the arguments are fleshed out as, and my understanding of a relevant case law would be if an argument's not fleshed out, then it's waived. Well, then who's the buyer of the RV? The Ormsby's. All right. And how do we get there? I believe all of the witnesses in this case except the defendant has adamantly maintained that the Ormsby's bought this unit and that Nexus was the seller. Even Nexus's own representative, Claude Donati, in his deposition, repeatedly answers questions and states that the Ormsby's bought this unit. It wasn't until directly questioned by his own counsel that he then changes that testimony after several hours of questioning. Well, it's objectively undermined by the record evidence is the challenge that you face. Right? They deliberately arranged for their son's company to be the buyer to achieve a sales tax benefit. That doesn't seem disputed, correct? That is true. Okay. So it's an odd position you find yourself in because they structured the whole transaction to avoid being the buyer, but yet your argument is that's exactly what they were, the buyer. Correct. Right? I think we have to be careful that we're not walking into another problem of tax fraud. I'm sorry, Your Honor. I didn't hear walking into another problem. No, I wanted just to flush out your argument. Go ahead. Okay. And so I also want to be clear that there are two different kinds of claims in this case, the UCC-based claims and the fraud-based claims. And the reason I point that out as being significant is that the UCC has a definition of what a buyer is, whereas the tort-based claims do not. Do you agree that if the district court correctly concluded that the 2Js purchased this RV from Roley White that your clients cannot prevail here? I don't agree with that. How could your clients prevail, the Ormsbys prevail here if the district court's determination based on the evidence in the record that 2Js purchased this from Roley White? How can you then prevail on a breach of contract or warranty claim? Because all of the testimony is that they bought this together. But you're going beyond the premise of my question. Okay. Assume that the district court's factual determination that there's no disputed fact that 2Js bought this from Roley White. Do you agree then that there's no way, if that is a correct, just work with me on the premise, if that is accurate, do you agree that your clients, the Ormsbys, cannot prevail on a breach of contract or warranty claim because they weren't part of the contract? I think the contract arose before that, Your Honor. You're walking away from the premise of my question. Okay. So you're focused on just that Roley White document. I'm focused on the fact if 2Js purchased the RV from Roley White and if the district court found there was no disputed fact about that, how could your clients prevail on any breach of contract or warranty claim if the contract was between 2Js and Roley White? Because of all the evidence that shows they bought it together as a family and the... So you're resisting the premise again. You're trying to say they were part of the contract. That it was purchased as a family, yes. And that's supported by the fact that the title that says 2Js lists the Ormsbys as the security interest holder. So it was always purchased... So we'd have to disagree and find there's an issue of fact on who purchased the RV. Correct. And the point I wanted to make about these two distinct types of claims is that the UCC breach of warranty, breach of contract claims... How do we get to the idea that they purchased the RV as a family? Their testimony? States that that was what they were doing and then that's reflected in the title document. That says 2Js LLC purchased this RV. I'm referring to the title document that's like the title with the state of Oregon where it lists 2Js and the Ormsbys as being the security interest and the testimony and evidence showing that... But a security interest isn't part of the contract. Correct. If I go buy a new car and a bank finances it and they're listed as having a security interest, they're not part of that contract. What's odd about it is the argument you're making that they bought it as a family and therefore they're buyers for purposes of pursuing a contract-based or tort-based claim is counter to what they have told us is it was very deliberate structuring to have 2Js be the buyer. The Ormsbys were well aware that 2Js was going to be the buyer. That didn't happen by some kind of act of fraud of their son on the parents or anything like that. They were very conscious of that. They knew about that. That is correct. I remember Eileen's testimony about that. No question about it. What's odd to me about it is why doesn't the case get litigated in terms of... It sounds like they either got a lemon or something close to a lemon in the RV. A lot of money on the line here with something like that. Why didn't they just litigate it through 2Js? In other words, 2Js could pursue a breach of contract claim, seek revocation. 2Js could pursue a warranty claim. They're the buyer on the bill of sale. It's odd that the case never seems to have gotten litigated like that. For some reason, 2Js shifts into the backdrop and now they're completely out of this appeal. Front and center are two named plaintiffs that have told us they purposely structured this so as not to be buyers. Their testimony has always been that they purchased it, that they entered into that agreement with Nexus before Raleigh White. Based upon the discussion with David Lent? Correct. That was supported by both the email communications internally with Nexus, which show Lent identifying the Ormsby's as the owners with another employee stating that that unit had been sold to the Ormsby's. Nexus argues that this sale arose later, but that dealer, Raleigh White, didn't even get involved until December. Has 2Js sued Raleigh White in another jurisdiction that has personal jurisdiction over Raleigh White? No, not to my knowledge. We'll give you a little bit of time on rebuttal. We've asked you a lot of questions and we want to give you time to make your points. We'll bring you back up in a couple minutes. Mr. Raleigh, good afternoon. Judge Scudder, Judge Pryor, Judge Saini, good afternoon. May it please the Court, my name is Christopher Raleigh and I represent Nexus RVs and David Lent. Your Honors, the two most important things to think about in the context of this case are these. First, the Ormsby's carefully structured this deal to minimize tax implications. That's why 2Js is listed as the buyer and there is no privity between 2Js and Nexus RVs. Second, this was a sale under the UCC. Because of the Ormsby's choice of who the purchaser would be, Raleigh White sold this RV to 2Js Enterprises on January the 28th, 2018. And we know this to be a fact because of the following evidence. 2Js Enterprises is listed as the buyer on the bill of sale. The RV is titled in the name of 2Js Enterprises. 2Js Enterprises paid $174,502 to Raleigh White. The Ormsby's are merely listed as lien holders on the certificates of title. And Your Honors, there is absolutely no evidence that Nexus even knew that 2Js would be listed as the buyer on the contract. So with those two points in mind, let's examine how this sale went down. And bearing in mind that the Ormsby's argument has shifted a bit over time. We know that October the 6th, 2017 was not the date of the sale. January 20th, 2018 was. To reach that conclusion, all we have to do is look at the bill of sale. And the bill of sale is the final contract. That's October, the discussion with Mr. Lent. Yes, Your Honor. Yeah, October is when they talked to him about reworking the thing and putting the right bed in and all that. That's correct. And put down the $3,000. That's correct. So we look to the bill of sale as being the final contract. In their response to motion for summary judgment at the district court level, the Ormsby's even admitted as much. They made the statement that the Ormsby family is indeed relying on the four corners of the bill of sale. There's no dispute that 2J's did not participate in any of the discussions that occurred on October the 6th, 2017. That's not disputed. It's on the record that the John Hobbit who owns 2J's never had any conversations with any member or any employee of Nexus. We also know that the October the 6th, 2017 conversation did not result in a final contract because the terms of the final contract weren't even agreed upon at that time. Let me give you an example. The purchaser wasn't known to Nexus as being 2J's. And then secondly, Mrs. Ormsby crossed out the words, as is, on the bill of sale. So we know even up to the point of signing the bill of sale, the terms are being negotiated. Which means October the 6th, 2017 could not possibly be the day that a meeting of the minds occurred. Was there a contract made that day, though? No, there was no signed contract, Your Honor. No. Was there an option contract under the statement? Was there any type of contract made when Ormsby gives over the $3,000? Yes. At most, Your Honor, there is a right of first refusal. And you don't have to take my word for that. You can look at the designated evidence and Mr. Ormsby's own deposition testimony where he specifically said that he paid the $3,000 because he wanted to hold the unit so that no one else would buy it. And as long as all preconditions were satisfied, we would consider buying the unit. Now that's a quote from Mr. Ormsby. It's a quote that the district court relied upon in reaching the conclusion that when they paid the $3,000, at most, what they paid that for was a right of first refusal. Bear in mind also, Your Honor, that Claude Donati, who is the managing member of Nexus RVs, testified that he would have refunded the $3,000 had the sale not gone through, but nobody asked for the refund of the $3,000. So I do quite agree with the district court's conclusion that at most, the $3,000 bought them a right of first refusal, which they exercised. Mark, when you say they exercised, through 2Js? Correct. A purchase occurred, and Your Honor is correct to be very specific about who purchased it. It was 2Js, and that was by the deliberate design of the parties involved. Mr. Rowley, have you been involved in litigation all throughout? I have not. Okay. My only question is, was 2Js ever active in the district court in saying, look, this is a tough claim for the Ormsby's to make? They're not a party to the contract, but 2Js could definitely pursue some of these remedies as the buyer. Your Honor, I can't speak to any activity that occurred before I got involved in the case, but the case has actively been litigated by 2Js and by the Ormsby's. In fact, my understanding up until just a few moments— By 2Js, they were? Yes. Yes. Was that the motion for summary judgment was opposed by the Ormsby's and 2Js. Do you know if 2Js has sued in a court that has jurisdiction over Riley-White? I am unaware of any such litigation, Your Honor. Okay. 2Js has a hard time suing Nexus. They have no contact with Nexus. They had no contact and there's no privity. They heard none of the representations that were allegedly false representations, and that's why the district court correctly concluded the breach of warranty, as it pertains to 2Js, there can be no breach of warranty, no revocation, no fraud, no remedy under the Arizona Consumer Fraud Act because 2Js never heard any of the statements that were made, much less those that are alleged to have been misrepresentations. There's no evidence that Mr. Lint had any discussions with 2Js, is there? That is correct, Your Honor. There is no evidence to that effect. So, Your Honor, we looked then to simply how the district court reached its conclusion and it is remarkably simple. In the absence of any privity between the purchasers and Nexus, the claims against Nexus have to be dismissed at summary judgment. They just simply do. If I can answer any other questions by the court, I see I have a little bit of time left. Otherwise, I will just rest on the brief that you submitted. Can I ask you one more question? Of course. One of the things I was trying to—I had a little bit of difficulty with the briefing on this point. In the brief you filed—and I don't mean to detain you with this. Maybe it's just the top one or two. What do you think they waived on appeal? It surprised me in your brief that you didn't just—you got a judgment in your favor on the merits. It's pretty strong. But your red brief, you—and rather than just go right into defending the judgment, you talk all about waiver. And I thought, what is waived? The issues were litigated. The arguments, Your Honor, that they raised in their appeal were not arguments that were raised at the district court level. Therefore, they have been waived. Give me one or two. Give me an example. Well, for example, consignment. They allege in their appeal that this was a consignment deal between Nexus and Raleigh White. And what they're saying is that because this was, in their view, a consignment agreement, which, by the way, conflicts with the evidence, but I'll get to that in just a second. Because this was a consignment deal, Raleigh White was acting as Nexus's agent. Well, that was an argument that was not developed whatsoever in their response to— Give me a second example. I got it. Give me a second one. You said a lot of stuff in there about waiver. I'm not trying to pop quiz you, but it just surprised me that there's all this stuff about waiver. I understand, Your Honor. And the other thing that they had waived was that— I can think of one example that I think was waived, harm. What harm the Ormsby suffered on their fraud claim. What's argued in the blue brief and the reply brief says it odds with what was pursued in the district court with respect to harm. That's correct. Okay. So that's two. Okay. All right. Okay. Mr. Raleigh, thank you very much. Thank you. Appreciate it.  Thank you, Your Honor. So I wanted to touch base on the privity issue. It's undisputed that the Ormsby's gave Nexus $3,000, that there was a transaction occurred. Mr. Donati agrees to that. And their explanation for what that bought has changed over time. In Mr. Donati's deposition, he testified that that was for some furniture. And then that was delivered to the Ormsby's when they purchased the RV. And that is at page 138 of his deposition. But then at summary judgment, they say it was just the option to hold the RV. And then now they're saying the first right of refusal. And there is no evidence to support that is the case. In fact, the evidence shows that they were making a down payment. And this puts them directly in privity with Nexus. And it is part of the basis of the fraud claims where they then relied on those misrepresentations in advancing the money. The point I was trying to make initially was that these claims do not use the statutory definition of the UCC as buyers. So the tort-based fraud claims are broader in nature. And so that we would ask that the court would reverse and remand this measure. Okay. Ms. Stewart, thank you very much. We appreciate it. Mr. Riley, thanks to you and your colleague. We'll take the appeal under advisement. And the court will be in recess.